# Selma, Marion & Memphis Railroad Company vs. Jno. M. Anderson.

1. CORPORATIONS: *Subscriptions thereto. How avoided.*

A statement on the part of the agent of a corporation as to the pecuniary condition and prospect of his corporation, will not avoid a subscription, unless the falsity and fraud of such representations are clearly shown, and unless it is manifest that the condition of the enterprise constituted a material inducement to the subscription.

2. SAME: *False representations of agents. Effect thereof.*

To avoid a subscription upon the ground of false representation of an agent, it must be shown that the statement was not uttered as an opinion, but as an ascertained and existing fact. It must not only be false in fact, but must also be either known to be so by the party uttering it, or his position must be one that made it his duty to know the truth. The resisting subscriber must show that he acted upon such statement; that his own position was such as warranted him in so acting; and that the statement was as to a fact material to the question of his subscription.

3. SAME: SAME.

If the representations are as to matters controlled by the charter, and as to which the subscriber is legally bound to know that the agent has no right to make representations inconsistent therewith, they will not avoid the subscription. As to matters not controlled by the charter, false and fraudulent representations, which come within the limitations, and by which one has been entrapped into a subscription, will avoid the contract just as fraud vitiates contracts of every character.

4. INSTRUCTIONS: *Case in judgment.*

The court instructed the jury to the effect, that "where an act of incorporation fixes the amount of the capital stock and the number of shares into which it shall be divided, the corporation can make no assessment nor call upon the stockholders until the stock has been subscribed, unless either expressly or by implication a different intent appears in the charter or in the subscription. And if they believe that the act incorporating plaintiff's company required the sum of three hundred thousand dollars to be paid in before any call could be made upon the subscribers, and plaintiff had failed to show that this had been done, they must find for defendant." *Held,* that this instruction announces a well settled principle of the law of such cases, but is nevertheless faulty, because (1) It submits to the jury the legal construction of plaintiff's charter, the legal effect of written instruments being a question for the

court, and not for the jury; (2) It raises the question whether the company was duly organized, which can only be done by a plea under oath denying the character assumed.

ERROR to the Circuit Court of *Marshall* County.

Hon. ORLANDO DAVIS, Judge.

The facts of the case and the instructions of the court commented upon, are sufficiently set out in the opinion of the court.

*Walter & Scruggs*, for plaintiffs in error, contended:

1. That the defendant, in subscribing to the capital stock of the plaintiff in error, must look alone to the charter, and in making the subscription, is governed by the terms of the charter. And subscribers are presumed to know the provisions of the charter under which the subscription is taken. Wight *v.* Shelby R. R. Co., 16 B. Monr., 4; Irvin *v.* Turnpike Co., 2 Penn., 466; Thigpen *v.* Mississippi Central R. R. Co., 32 Miss., 347; Ellison *v.* Mobile & Ohio R. R. Co., 36 Miss., 572.

2. That in giving the second instruction for defendant, requiring plaintiff to prove its organization as a corporation before it could recover, without a plea under oath denying this organization, the court below erred. And that this error was fatal to plaintiff's action. That since 1836 (Hutch. Code, 852), the character of the parties to the record and the signature to instruments sued on can be called in question only by plea supported by affidavit. This provision has been brought forward and incorporated into the Code of 1871 (§ 683.) Reed *v.* Benton & Manchester R. R. & Banking Co., 4 How., 257; Vicksburg Water Works Co. *v.* Washington et al., 1 S. & M., 596; Cole *v.* Harman, 8 id., 562; Wade *v.* Staunton, 5 How., 631.

*Strickland & Faut*, for defendant in error, commented at length upon the authorities cited by counsel for plaintiff in error, and endeavored to show that they were not applicable to the case at bar, and insisted:

1. That a corporation is bound by the acts and representations of its agents within the scope of their agency.

2. That a contract of subscription procured by fraudulent and false representations is not binding upon the subscriber, and that it was a question of fact for the jury to decide whether or not the defendant was induced to make his subscription by such reprerentations, etc., and the evidence of defendant himself that such was the case was competent testimony, and the charge given to the jury embodying this proposition was not erroneous. Angell & Ames on Corp., 339; Herman on Estop., 529 ; Waldo v. Chicago, St. Paul & Fond du Lac R. R. Co., 14 Wis., 625 ; Walworth Co. Bank v. Farmers' L. & T. Co., 16 id., 629 ; Crump v. U. S. Mining Co., 7 Grat. (Va.), 352 ; Sandford v. Handy, 23 Wend., 259.

3. That conditions precedent must be proven before a recovery can be had of a stockholder, and that the omission to make this proof was a fatal omission by plaintiff of an essential fact, and the defendant had a right to take advantage of it by an instruction from the court. And even if it was error in the court to give this instruction, unless there is a strong probability of a different result on another trial, this court will not reverse the judgment. 41 Miss., 191 ; 44 id., 449 ; 12 S. & M., 161 ; Magee v. Harrington, 13 id., 403.

CHALMERS, J., delivered the opinion of the court.

This is a suit brought by the railroad corporation against defendant, to recover a subscription to the capital stock of the former by the latter. There was verdict and judgment in the court below for defendant. The errors assigned are the admission of certain testimony and the giving of two charges. The testimony admitted and excepted to was made by defendant in proper person, to the effect that he had been induced to subscribe to the enterprise by the false and fraudulent representations of N. B. Forrest, the president of the corporation, who stated that "he had sufficient means in hand or in view to construct said railroad," which representations were publicly made and were well known to " the directors of the railroad, and were allowed to go uncontradicted by them, and that he, defendant, relied upon the same,

having confidence in said Forrest, and no access to the books of the company." The record discloses no testimony showing that in point of fact these representations, if made, were either false or fraudulent.

In connection with this testimony, the court instructed the jury that "no mere opinion expressed by the agent, N. B. Forrest, in procuring said subscription, amounts to a fraud upon the rights of defendant, nor do they constitute a sufficient reason to avoid his contract; but if the jury believe from the evidence, that the defendant was induced to make his subscription by reason of the false and fraudulent representation of said Forrest as president and agent of plaintiff, of matters within his knowledge, or which it was his duty to have known as president, as to any existing material fact, or as to any past transaction of a nature calculated to influence defendant in making his subscription, then said contract of subscription is void, and the jury will find for defendant."

Both branches of this instruction correctly announce the princeples of law enunciated by them; but the first branch only, which announces that no mere expression of opinion on the part of the agent of the corporation would avoid the contract, seems applicable to the facts as disclosed by the record. We will not say that a case might not arise where a statement upon the part of the agent as to the pecuniary condition and prospects of his corporation would not avoid a subscription, but it must be a case where both the falsity and the fraud of such representations are clearly shown, and where it is manifest that the condition of the enterprise constituted a material inducement to the subscription. To hold that every subscription to an inchoate undertaking like this can be avoided, because some enthusiastic or reckless agent has boasted of its resources or prophesied its speedy completion, would be to nullify, perhaps, a majority of such contracts. To escape from a subscription on this ground, several things must concur. It must be shown that the statement was not uttered as an opinion, but as an ascertained and existing fact. It must not only be false in fact, but must be also either known to be so by

the party uttering it, or his position must be one that made it his duty to know the truth.    The resisting subscriber must show that he acted upon such statement; that his own position was such as warranted him in so acting, and that the statement was as to a fact material to the question of his subscription.    Even with these limitations, it will not avail if the representations are as to matters controlled by the charter, and as to which the subscriber is legally bound to know that the agent has no right to make representations inconsistent therewith.    Wight v. Shelby R. R., 16 B. Mon., 4; Irvin v. Turnpike Co., 2 Penn., 466; Andrews v. Ohio & Miss. R. R. Co., 14 Ill., 169; Ellison v. M. & O. R. R. Co., 36 Miss., 572.

As to matters not controlled by the charter, false and fraudulent representations, which come within the limitations above noted, and by which a party has been entrapped into a subscription to a public enterprise, will avoid the contract just as fraud avoids contracts of every character.    Waldo v. Chicago, St. P. & F. du L. R. R., 14 Wis., 625; Crump v. United States Mining Co., 7 Grat., 352; Wert v. Crawfordsville & Alamo T. Co., 19 Ind., 242; Crossman v. Penrose Ferry Bridge Co., 26 Penn. St., 69; 63 Ind., 381; 2 Head (Tenn.), 23.

So far as the record discloses, none of the essential facts above specified existed in the case at bar.    It is not shown whether the statements alleged to have been made by the president of the railroad were made as matters of opinion, or as existing facts.    It is not shown whether they were really true or false, nor whether they were material to the question of defendant's subscription; nor whether his subscription was made because he was, by said statement, induced to make it, and would not have made it but for the belief thereby engendered in his mind that the company "already had means enough in hand, or in view, to complete the road."

It was therefore improper to admit the testimony, standing as it did alone, and it was erroneous to give the instruction without further proof to which it could be applied.

The other assignment of error is, as to the action of the court

in giving the second charge on behalf of defendant. By said charge, the jury were instructed that " where an act of incorporation fixes the amount of capital stock of the enterprise, and the number of shares into which it shall be divided, the corporation can make no assessment nor call upon the individual stockholders until all the stock has been subscribed, unless either expressly or by implication, a different intent appears either in the charter or in the subscription." The jury were further told that if they believed that the act incorporating plaintiff company required the sum of three hundred thousand dollars to be paid in before any call could be made upon the subscribers, and that plaintiff had failed to show that this had been done, they must find for the defendants.

It seems well settled that where the charter of a corporation provides for or authorizes a stipulated amount of capital stock, divided into shares of a specific number, on value, no assessment can be made against the subscribers until the whole amount has been subscribed, unless a contrary intention is manifested in the charter or in the subscription. The reason given is that the subscriber for each share knows that the total expense of the enterprise may require the whole or a part of the stock subscribed ; that, therefore, his share will bear its proportionate part of this expense, and he has, consequently, a right to demand that nothing be exacted from him until he has the number of coshareholders contemplated in the charter. Salem Mill Corp. v. Ropes, 6 Pick., 23 ; Central Turnpike Co. v. Valentine, 10 id., 142 ; Peoria R. R. Co. v. Preston, 35 Iowa, 116.

The instruction is, nevertheless, faulty in several respects. It submits to the jury the legal construction of plaintiff's charter. The legal effect of written instruments is a question for the court and not for the jury. It seems intended to strike at the fourth clause of the charter, which relates to the organization of the company, rather than at the third clause, which specifies the amount of capital stock and its division into shares.

If the charge was intended to raise the question of whether the

company was duly organized, then it is an attack upon the character in which plaintiff sues, and such an attack can only be made by a plea under oath, denying the character assumed. Rev. Code, § 683; Reed v. Benton & M. R. R. & Bank Co., 4 How., 257.

But if, by the charge, it was intended to assert that plaintiff could make no call upon its stockholders until the whole amount of three hundred thousand dollars, authorized by the third clause of the charter, had been subscribed, then it is erroneous, because it is plainly implied by the eighth clause that this shall not be necessary. This last mentioned clause seems to have been expressly drawn to meet the rule announced by the cases above cited. It provides that each subscriber may be required to pay ten per cent. of his subscription at the time of making the same, and that "no further payment of stock shall be demanded until in the opinion of the board a sufficient amount of capital stock has been subscribed, with the means and credits of the company, to complete and construct said road, and a resolution expressing that opinion should be entered upon the minutes of the board," etc. Acts of 1859, pp. 55, 56. Manifestly this provision contemplates an assessment and call upon the subscribers before the whole capital stock had been subscribed, upon the conditions enumerated in the clause, and plaintiff would only be required to show that these conditions had been complied with in order to maintain its suit.

The instruction, therefore, in any point of view, is erroneous.

The case is reversed and remanded, and new trial awarded.